DECISION AND ORDER
WENONA T. SINGEL, Chief Appellate Justice.
This appeal is brought by the Appellant Little Traverse Bay Bands of Odawa Indians Gaming Regulatory Commission (Commission) requesting that the Appellate Court vacate the Opinion of the Tribal Court reversing a decision of the Commission that had revoked Appellee Mary Roberts’ gaming license following an administrative hearing. The Tribal Court also granted the Ms. Roberts several forms of injunctive relief, including ordering that the Commission a) expunge the revocation of Ms. Roberts’ gaming license, b) reinstate her to her previous position of employment, and c) pay her salary for the time that her license was suspended and revoked. Judge Jenny Kronk presided in the Tribal Court’s review of this administrative appeal.
On appeal, the Commission asserts that its requested relief is warranted because the Court erred by exceeding the authority delegated to it by the Tribal Council, by improperly reversing the Commission’s decision revoking the Appellee’s gaming license, and by granting relief that violated the Tribe’s sovereign immunity and separation of powers.
Summary of the Facts
On February 26, 2011, Ms. Roberts was employed by the Odawa Casino Resort as a casino executive. She was also a holder of a gaming license issued by the Commission. On that day, Ms. Roberts was asked to approach the casino cage to determine whether a patron could redeem chips for cash. The patron in question did not possess identification.
Ms. Roberts initially spoke with the employee working in the casino cage, and both she and the cage employee agreed that the patron could not redeem the chips for cash. Following that initial conversation, Ms. Roberts spoke with a casino security employee. Both Ms. Roberts and the security employee allowed the husband of the patron to redeem the chips for cash, even though the husband did not personally win the chips. Ms. Roberts later admitted that the casino rules did not permit a patron to use their spouse as a stand-in to redeem chips for cash.
Based upon these facts, the Commission revoked Ms. Robert’s gaming license on March 14,2011.
Authority of the Gaming Regulatory Commission
The Appellant Gaming Regulatory Commission is a subordinate entity of the Tribe created by the Gaming Regulatory Commission statute. Section 7.406, Gaming Regulatory Commission Statute, WOS 2011-005, February 26, 2011, Section VI. The statute establishes the Commission “as an Executive Commission whose duty it is to regulate tribal gaming operations.” *38 Id. The Commission’s delegation of regulatory authority under the statute is broad. The Commission is charged with ensuring compliance with Tribal, Federal, and, if applicable, State laws and regulations. Id. The Commission serves as the licensing authority for the Tribe’s gaming operation and for all gaming employees. The statute also states that “[t]he Commission shall have authority to take enforcement actions, including suspension or revocation of an individual gaming license when appropriate.” Id. If the Commission receives reliable information from the NIGC or other credible source, the statute also provides that “the Commission shall suspend/revoke such license and shall notify in writing the licensee of the suspension and the proposed revocation.” Section 7.413, Gaming Regulatory Commission Statute, WOS 2011-005, February 26, 2011, Section XIII. Finally, the statute establishes a process for an administrative hearing for licensees who seek to challenge their license suspension or revocation. The statute directs the Commission to hold a hearing upon the request of licensee who receives such notice. Id. The procedures for hearings and appeals are described in detail in Section VII of the Gaming Regulatory Commission Regulations.
Tribal Court Review of a Commission Revocation Decision
The Appellant argues that the Tribal Court exceeded its authority when it reviewed Ms. Robert’s appeal of the Commission’s decision to revoke her license following its hearing on March 14, 2011. We begin our analysis of the scope of Tribal Court judicial review in this case by first noting the applicability of the Tribe’s sovereign immunity. The Commission is a subordinate entity of the Tribe that possesses sovereign immunity from suit. Article XVIII, Section A of the LTBB Constitution provides that,
[t]he Little Traverse Bay Bands of Oda-wa Indians, including all subordinate entities, shall be immune from suit except to the extent that the Tribal Council clearly and expressly waives its sovereign immunity, and officials and employees of the Tribe acting within the scope of their duties or authority shall be immune from suit.
Article XVIII, Section A of the LTBB Constitution.
As the provision above states, the Commission’s immunity from suit may be waived “to the extent that the Tribal Council clearly and expressly waives its sovereign immunity ...” The regulations adopted pursuant to the statute clearly and expressly waive the Tribe’s sovereign immunity because they state, in Section VTI(S)(1), that “[f]ollowing a final decision of the Gaming Regulatory Commission after a hearing under this Section, a Licensee has a right to file an appeal with the Tribal Court.” Section VII(S)(1), Gaming Regulatory Commission Regulations, approved by Tribal Council on October 24, 2010.[1]
However, mere consent to suit in Tribal Court does not effectively establish a blanket waiver of sovereign immunity for all nature of claims and all forms of relief. Waivers of sovereign immunity are limited to the clear and express scope set forth in the relevant statute, regulation, or resolution of the Tribal Council. In this case, the terms of the Commission’s waiver of immunity are defined by the gaming regulatory statute and the gaming regulation’s *39 reference to Tribal Court review. Unless there is a separate applicable waiver of immunity, the Tribal Court and Appellate Court must apply and give effect to the provisions in these sources of law defining the scope of Tribal Court review.
The Tribal Court’s authority to review final decisions of the Commission resulting from a Commission hearing is governed by Section 7.414 of the Gaming Regulatory Statute and Section VII(S) of the Gaming Regulatory Commission’s regulations. Section 7.414 of the statute provides that, “[a]ny Appeals of Regulatory decisions shall be decided by the Commission prior to being taken to the Tribal Court.” WOS 2011-005, February 26, 2011. This general reference to Tribal Court review of Commission hearing determinations must be read together with Section VH(S)(3) of the Commission’s regulations. The regulations, which themselves are authorized by Section E(15) of the Gaming Regulatory Statute, and which were approved by the Tribal Council on October 24, 2010, state the following:
S. Tribal Court Review
⅜ ⅜ ⅜
3. The sole purpose of the Tribal Court appeal will be to determine if the Commission made a procedural error that significantly prejudiced the Licensee. In the event the Tribal Court determines such error was made, it shall remand to the Gaming Regulatory Commission to hold a new hearing in accordance with these Regulations.
Section VII(S)(3), Gaming Regulatory Commission Regulations, approved by Tribal Council on October 24, 2010 (emphasis added).
As the above provision states, the “sole purpose” of a Tribal Court appeal of a decision issued by the Commission following a hearing is “to determine if the Commission made a procedural error that significantly prejudiced the Licensee.” This provision imposes a significant limitation on the scope of the Tribal Court’s review in these cases. In addition, this provision, approved by the Tribal Council in 2010, represented a departure from a broader standard of review that had been authorized before the adoption of these regulations. In the Gaming Regulatory Commission regulations approved by the Tribal Council in 2004, the Tribal Court’s scope of review was described as follows:
The sole purpose of the Tribal Court appeal will be to determine if there has been a clear error in the decision of the Gaming Regulatory Commission based on the evidence and documentation provided by the applicant to the Gaming Regulatory Commission and compiled by the Gaming Regulatory Commission pursuant to the application and hearing process.
Section VII(H)(3), Gaming Regulatory Commission Regulations, approved by Tribal Council on April 18, 2004 (emphasis added).
Thus, under the earlier version of the gaming regulations, the Tribal Court had the broad authority to review Commission decisions for “clear error.” Such “clear error” may have been an erroneous conclusion of law, an erroneous factual finding, or an erroneous application of the Commission’s procedures. The fact that the current regulations specify that Tribal Court review is limited to “procedural errors” indicates an express intent on the part of the Commission and the Tribal Council to prevent the Tribal Court from reviewing the substantive merits of the petitions heard by the Commission. Under the existing statutory and regulatory framework, the Tribal Court does not possess the au *40 thority to review the Commission’s factual and legal conclusions of law de novo. Rather, Tribal Court review of decisions of the Commission is limited to determining whether the Commission “made a procedural error that significantly prejudiced the Licensee.”
In addition, the current Section VH(S)(3) also limits the form of relief that the Tribal Court is authorized to provide. It states that where the Tribal Court concludes that the Commission made a procedural error that significantly prejudiced the licensee, the Tribal Court “shall remand to the Gaming Regulatory Commission to hold a new hearing in accordance with these Regulations.” This provision also imposes a significant limitation on the scope of the Tribal Court’s ability to fashion relief for an appeal of a Commission decision to revoke a license following a hearing. Just as we noted above in the case of the scope of review, any award of relief other than the remand permitted by the regulation would necessitate a broader waiver of the Tribe’s sovereign immunity.
In accordance with Section VII(S)(3) of the Gaming Regulatory Commission’s regulations, the Appellate Court reviews the Tribal Court’s Opinion to determine if it properly limited its review to the issue of whether the Commission “made a procedural error that significantly prejudiced the Licensee,” Ms. Roberts.
Tribal Court Review of the Commission’s Revocation of Ms. Roberts’ License
However, before we address whether the Commission “made a procedural error that significantly prejudiced” Ms. Roberts, we must also address what constitutes a “procedural error.” This term is not specifically defined in the gaming regulatory statute or in the gaming regulations. In the absence of any statutory definition, we apply the ordinary meaning of the term. The ordinary meaning of a “procedural error” is an error which occurs when a required procedure is not followed. At first glance, it appears unclear whether the relevant procedures for “procedural error” review include all procedures governing the Commission’s activities under the entire gaming regulatory statute and gaming regulations, or just those procedures applicable to the Commission’s holding of hearings. However, when Section VII is read as a whole, it becomes apparent that the reference to “procedural error” is made in relation to the conduct of hearings by the Commission. This is because the section heading of Section VII is “Appeals and Hearing Procedures,” and the sentence that immediately follows the reference in Section VII(S)(3) to “procedural error” refers to the Tribal Court remanding the matter to the Commission for the holding of a new hearing.
The sole purpose of the Tribal Court appeal will be to determine if the Commission made a procedural error that significantly prejudiced the Licensee. In the event the Tribal Court determines such error was made, it shall remand to the Gaming Regulatory Commission to hold a new hearing in accordance with these Regulations.
Section VII(S)(3), Gaming Regulatory Commission Regulations, approved by Tribal Council on October 24,2010.
As a result, we conclude that Tribal Court review is limited to violations of the procedural requirements of Commission hearings as set out in Section VII.
The meaning of “procedural error” has yet another ambiguity that the Appellate Court must resolve. This latter issue is whether a “procedural error” includes violations of the LTBB Constitution’s protec *41 tion of due process that fall outside the scope of the Commission’s regulatory procedural requirements. We conclude that such violations are outside the scope of the Section VII(S)(3). Although such violations raise issues related to access to justice for the vindication of fundamental rights, we must find a clear expression of the Tribal Council’s intent to waive the Commission’s sovereign immunity and permit litigation of these claims. Such a waiver would be clear if Section VII(S)(3) stated, for example, that the Tribal Court was authorized to determine if the Commission violated the constitutional rights of the licensee. Instead, the provision merely refers to review of “procedural errors,” which appears to implicate mere violations of the regulation’s own procedural requirements. The Appellate Court also notes that the LTBB Constitution specifically recognizes that individuals may bring suits in Tribal Court against officials or employees of the Tribe who act beyond the scope of their duties and authority to enforce rights and duties established by the LTBB Constitution or other laws. Article XVIII, Section B of the LTBB Constitution. In a case such as this one, however, the above Constitutional provision does not apply because the case is brought against a subordinate entity of the Tribe rather than a tribal officer or employee, and no argument has been made to the Tribal Court asserting that the above provision should apply.[2]
The procedures set out in the gaming regulations that govern the Commission’s hearings are set forth in Section VII (“Appeals and Hearing Procedures”). These procedures include sections on “Applicability,” “Fair Hearings,” “Roles and Responsibilities” of the relevant persons involved in hearings; “Service of Notice to Deny, Suspend, or Revoke a License,” “Rights of Licensee,” “Timing of Hearing,” “Prohibition of Ex Parte Communication,” “Appearance through an Advocate,” “Discovery and Mandated Exchanges,” “Confidential and Privileged Materials,” “Requests for Information,” “Limitations,” “Conduct of Hearings,” “Evidence,” “Failure to Testify,” “Continuances,” “Default,” “Decision of the Commission,” and “Tribal Court Review.” The Tribal Court was therefore authorized to review whether any of the above procedural requirements were violated by the Commission. Section VII, Gaming Regulatory Commission Regulations, approved by Tribal Council on October 24, 2010.
The Tribal Court’s Opinion reveals that it did not assess whether the Commission violated the procedural requirements set out in Section VII of the gaming regulations. Instead, the Tribal Court reviewed the substantive legal issue of whether Ms. Roberts violated the Bank Secrecy Act. Opinion at 5-9. It also reviewed what it considered to be flaws in the Commission’s *42 hearing, but it did not relate these flaws to any violation of the procedural requirements of Section VII. Opinion at 9-11. For example, the Opinion stated that the Commission stopped the recording of the hearing twice to review its evidence packet and a surveillance video, but it did not reveal which portions of the video and audio were reviewed. In addition, the Opinion stated that the person who prepared the evidence packet did not testify as a witness. Neither of these matters run afoul of the procedural requirements set forth in Section VII.
In addition, the Tribal Court Opinion also made conflicting statements regarding whether Ms. Roberts received notice that her license might be revoked prior to the Commission hearing. At first, the Opinion states that “it does not appear that prior to the hearing before the GRC, the Appellant was aware that the revocation of her license was a possibility.” Opinion at 9. Later, the Opinion acknowledges that Ms. Roberts did receive such notice, because the Suspension Order issued prior to the hearing stated that the suspension would apply “pending a revocation hearing.” Opinion at 10. In the end, the Tribal Court finds that error was committed because it was the Regulatory Director rather than the Commission that issued the Suspension Order referring to a later revocation hearing. The procedural requirements in Section VII do not mandate that the Commission itself provide notice of a possible license revocation prior to a hearing. The Tribal Court also evaluates whether the Regulatory Director had the authority to issue a Suspension Order. The hearing procedures do address this matter; however they confirm that the Commission has the authority to make delegations of its authority to the Regulatory Director. Section VII(C) of the hearing procedures states that “[t]he Commission reserves the right to designate and assign duties to the Gaming Regulatory Director and/or Gaming Regulatory Administrative Assistant.” Section VII(C) of the Gaming Regulatory Commission Regulations, approved by Tribal Council on October 24, 2010. As a result, it appeal’s that the Regulatory Director’s issuance of the Suspension Order did not constitute a “procedural error.”
Finally, the remaining portion of the Tribal Court Opinion reviewed the substantive legal issue of whether the revocation of Ms. Roberts license was warranted under the gaming regulatory statute and its implementing regulations. This review was improper because it did not address whether the Commission made a “procedural error,” and it therefore exceeded the scope of Tribal Court review authorized under Section VTI(S)(3).
In summary, the Tribal Court’s Opinion improperly exceeded the limited scope of review permitted under Section VII(S)(3). In addition, the Opinion did not identify any “procedural error that significantly prejudiced” Ms. Roberts.
Tribal Court Award of Injunctive Relief
Because the Tribal Court did not identify any “procedural error that significantly prejudiced” Ms. Roberts, any award of relief must be vacated. In addition, the Appellate Court notes that the only permissible relief for appeals of Commission decisions under Section VII(S)(3) is a “remand to the [Commission] to hold a new hearing in accordance with [the gaming regulations].” Therefore, even if the Tribal Court had identified a “procedural error that significantly prejudiced” Ms. Roberts, the various forms of injunctive relief that it awarded unlawfully exceed the Tribal Court’s limited authority in this case.
*43 Separation of Powers and Tribal Court Review
Ms. Roberts has emphasized throughout her briefing and oral argument that the Commission erred by concluding that her actions warranted the revocation of her license. She has also emphasized throughout the appeal that the Commission did not give her a fair hearing. The Appellate Court is sympathetic to' Ms. Roberts’ concerns, but it is bound to limit judicial review of the Commission’s actions in accordance with the very limited review permitted by Section VII(S)(3) of the gaming regulations. As noted above, this limited review must be applied because it constitutes the limited scope of the Commission’s waiver of sovereign immunity. In addition, this limited review is required by the separation of powers requirement embodied in the LTBB Constitution.
Section D of Article VI of the LTBB Constitution stipulates that “[n]o branch of government shall exercise the powers, duties or functions delegated to another branch.” Article VI, Section D of the LTBB Constitution. Furthermore, Section C of Article VI of the LTBB specifically delegates various authorities to the separate branches of the tribal government. It states the following:
C. Delegation of Authority
The Tribal membership, through this document, authorizes: the Tribal Council to be the Legislative body and to make laws and appropriate funds in accordance with Article VII; the Executive Branch to administer such funds, enforce this Constitution and laws passed thereunder, and implement policies and procedures enacted by the Tribal Council in accordance with Article VIII; and the Judicial Branch to interpret this Tribal Constitution and to apply the laws of the Little Traverse Bay Bands of Odawa Indians in accordance with Article IX.
Article VI, Section C of the LTBB Constitution.
Under Section C above, the Tribal Council is delegated the authority to make laws, the Executive Branch is charged with enforcing the Constitution and laws adopted by the Tribal Council, and the Judicial Branch is charged with interpreting the Tribal Constitution and applying the laws of the Tribe. In addition, Section A of Article XVIII of the LTBB Constitution refers to the Tribal Council as the body that possesses the power to make waivers of sovereign immunity. Article XVIII, Section A of the LTBB Constitution. The Judiciary does not have the power to waive the Tribe’s sovereign immunity. On the contrary, all waivers must be made by the Tribal Council itself or by lawful delegation to an Executive Branch agency. In the absence of an effective waiver of immunity, the Judiciary may not exercise judicial review.
Even when parties assert rights that arise under the Constitution, the Judiciary’s jurisdiction still requires a clear and express waiver of sovereign immunity before it can review a constitutional claim. Consequently, when a party claims that the Tribe or one of its subordinate entities has deprived that individual of liberty or property without due process of law in violation of Article II, Section 8 of the Constitution, the Judiciary must still identify a waiver of the Tribe’s sovereign immunity before it may proceed to review a claim that names the Tribe or one of its entities as a defendant. This requirement is further emphasized by Paragraphs 1, 2, and 4 of Section C of Article IX of the Constitution. For example, Paragraphs 1 and 2 provide that “[t]he judicial power of the Tribal Court shall extend to all civil and criminal cases arising under this Trib *44 al Constitution ...” and “[t]he Tribal Court shall have the power to interpret the Constitution and laws of the Little Traverse Bay Bands of Odawa Indians.” At the same time, Paragraph 4 of Section C provides that the Tribal Court’s jurisdiction “shall not be construed to be a waiver of the sovereign immunity” of the Tribe. Article IX, Section C, Paragraphs 1, 2 and 4 of the LTBB Constitution. The resulting effect is that the Judiciary has the power to interpret the Constitution and hear claims invoking constitutional rights, but only if a valid waiver of the Tribe’s sovereign immunity applies.
In this case, Ms. Roberts has expressed several concerns related to the Commission’s conduct of the hearing leading to the revocation of her gaming license. These claims fall outside the scope of the Tribal Court’s authority to review the Commission’s decision for “procedural error that significantly prejudiced the Licensee.” Therefore, unless she can point to an effective waiver of sovereign immunity, the Appellate Court and Tribal Court are incapable of reviewing her claims. In the absence of a waiver of immunity, Ms. Roberts and other similarly situated individuals must resort to the Tribal Council’s legislative process to approve amended procedures for the Commission’s administrative hearing process.
CONCLUSION
For the reasons described above, the Appellate Court concludes that the Tribal Court failed to apply the relevant scope of review permitted for judicial review of decisions issued by the Commission following a hearing. In addition, for the portion of the Tribal Court Opinion that did arguably review the Commission’s actions for “procedural error,” the Appellate Court finds that no such error was committed. As a result, the Appellate Court hereby vacates the Tribal Court Opinion and affirms the revocation decision of the Commission.
IT IS SO ORDERED.

. The Appellate Court notes that the Tribal Council also approved a set of Gaming Regulatory Commission Regulations on October 21, 2012. These 2012 regulations did not alter or repeal any of the provisions cited in this Decision and Order.

. The Appellate Court notes that in her original appeal to the Tribal Court, Ms. Roberts named as defendants two members of the Commission and the Director of the Regulatory Department in their individual and official capacities in addition to the Commission. In a Pretrial Order issued June 2, 2011, the Tribal Court noted that because the case was presented as an appeal of an administrative hearing, the parties had reached an agreement that the named parties to the suit would only include the Commission and Ms. Roberts. Following that Pretrial Order, the individuals were no longer defendants in Ms. Roberts’ appeal. Consistent with this change, the Opinion of the Tribal Court identified Ms. Roberts and the Commission as the sole parties to the case. Now, in her brief to the Appellate Court, Ms. Roberts has re-named these individuals as parties to the Commission's appeal. Ms. Roberts’ attempt to renew litigation against these individuals on appeal to the Appellate Court is not effective, since the Pretrial Order of June 2, 2011 effectively dismissing the individual defendants remains the law of the case.